```
                                                               FILED
                                                       U.S. DISTRICT COURT
                                                               DIV.
        IN THE UNITED STATES DISTRICT COURT
         FOR THE SOUTHERN DISTRICT OF GEORGIA
                 BRUNSWICK DIVISION            2011 MAR 24  PM 4:29

                                                  CLERK_____
                                                      SO. DIST. OF GA.
```

UNITED STATES OF AMERICA,

vs.                                    CASE NO.: CR210-080

JAMES R. HINES

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Defendant James R. Hines ("Defendant") has been charged with three (3) counts of passing, presenting, and possessing counterfeit securities of corporations and organizations, in violation of 18 U.S.C. § 513(a). Defendant filed a Motion to Suppress, to which the Government filed a Response. The undersigned conducted an evidentiary hearing on March 10, 2011, at which Dillon Howard testified.

## FINDINGS OF FACT

The credible testimony at the evidentiary hearing establishes the following:

On July 16, 2010, former City of Darien Police Department Officer[1] Dillon Howard ("Howard") received a call from the Chief of Police, who informed him that the manager of the Heritage Bank stated that four (4) black males dressed as construction workers had tried to cash checks at the Heritage Bank.[2] Howard was traveling on Interstate 95

---

[1] Howard currently is employed as a Deputy with the McIntosh County Sheriff's Office.

[2] A teller at the Heritage Bank told the Chief of Police that a group of people had been going to banks along the coast to cash counterfeit checks (i.e., the checks were written on seemingly legitimate accounts by were not written by authorized individuals). Howard's testimony was a little confusing as to when the

and exited the interstate to begin traveling on Highway 17 in Darien. As he was traveling down Highway 17, the manager of the Southeast Bank, which is approximately one-quarter (1/4) of a mile from the Heritage Bank, flagged down Howard and told him that the four (4) males who were in Heritage Bank had just walked past his bank. Howard saw four (4) black males with hard hats, vests, and "construction worker clothes" on walking past the fire department. Howard stated that, when he got out of his patrol car, he radioed for back-up. He also stated that only three (3) men were together, but he saw the fourth man about 50 yards away and asked him to come to him (Howard). Before the other officers arrived, Howard called in the driver's licenses to dispatch for criminal history checks on the state and national criminal databases. Howard asked the four (4) men if they had any information about attempts to cash checks at the Heritage Bank, and they said they did not. Officer Marcus Williams of the Darien Police Department and Investigator Cope with the McIntosh County Sheriff's Office arrived on the scene. Howard asked Defendant if he had any checks, and Defendant pulled one from his wallet which was made payable to Defendant and had been endorsed. Investigator Cope stated he believed this check was counterfeit, based on a similar case he previously worked. Defendant and another of the four (4) males were arrested for passing counterfeit checks.

Defendant asserts that he was "seized" unreasonably under the Fourth Amendment when he was directed to produce his driver's license and a check.

---

Chief of Police was provided this information and when he passed along this information to Howard or other officers.

2

## DISCUSSION AND CITATION TO AUTHORITY

There are three types of police-citizen encounters "which invoke the [F]ourth [A]mendment: police-citizen communications involving no coercion or detention; brief seizures or investigative detentions; and full-scale arrests." United States v. Hastamorir, 881 F.2d 1551, 1556 (11th Cir. 1989). "The Fourth Amendment prohibits 'unreasonable searches and seizures' by the Government, and its protections extend [even] to brief investigatory stops of persons . . . that fall short of traditional arrest." United States v. Arvizu, 534 U.S. 266, 273 (2002). "Even when a police officer has no basis for suspecting an individual, he may pose questions and ask for identification, provided he does not induce cooperation by coercive means." United States v. Mitchell, No. 09-15292, 2011 WL 31788, at *2 (11th Cir. Jan. 6, 2011). "If a reasonable person would feel free to terminate the encounter, then he . . . has not been seized. Id. Relevant factors to this inquiry include, "among other things: whether the police officer blocked the individual's path, the display of weapons, whether identification is retained, the individual's age and intelligence, the number of police officers present, any physical touching of the suspect, and the language and tone of voice of the police." Id. "A Fourth Amendment seizure occurs only when, by means of physical force or a show of authority, a person's freedom of movement is restrained." Id. (internal citation and punctuation omitted).

Generally, "law enforcement officials may not seize or detain a person without probable cause to believe that he has committed a crime." United States v. Williams, 619 F.3d 1269, 1270 (11th Cir. 2010). However, "the police are not automatically shorn of authority to stop a suspect . . . merely because the criminal has completed his crime

3

and escaped from the scene." Id. "[I]f police have a reasonable suspicion, grounded in specific and articulable facts, that a person they encounter was involved in . . . a completed felony, then" police "may . . . investigate that suspicion." Id. at 1271. "[T]he concept of reasonable suspicion is somewhat abstract, but a court must consider the 'totality of the circumstances' and determine whether an officer had 'a particularized and objective basis for suspecting wrongdoing.'" Id. (quoting Arvizu, 534 U.S. at 273-74) (alteration in original).

The evidence before the Court reveals that, at the time Defendant produced the check from his wallet, he and three (3) other men were in the presence of three (3) law enforcement officers, Howard had possession of Defendant's driver's license[3], and at least one (1) of the officers had his weapon holstered. These factors weigh in favor of a finding that this encounter became a seizure or investigative detention. However, Defendant appears to be over the age of 25 and of at least average intelligence, as he seemed to be communicating well with his attorney throughout the evidentiary hearing. There is no evidence that the officers touched Defendant in any way or used a harsh tone of voice or language with Defendant. Further, there is no evidence that officers blocked Defendant's path or displayed their weapons to Defendant or the other three (3) men. In this close case, and in consideration of the factors presented, the undersigned finds that Defendant was not seized within the meaning of the Fourth Amendment.

Assuming, *arguendo*, that Defendant was "seized", Howard's actions were constitutionally reasonable under the totality of the circumstances. Howard was informed that four (4) black men dressed as construction workers had attempted to cash

---

[3] Howard testified that the four (4) men provided their driver's licenses to him before the other officers arrived at the scene.

AO 72A
(Rev. 8/82)

checks at the Heritage Bank in Darien, Georgia, and he saw four (4) black men, walking together, not far from the Heritage Bank, who fit this description. There is nothing before the Court which indicates that there were any other people in the general area, let alone people dressed as construction workers. While the undersigned recognizes Howard's testimony that these men disavowed knowledge of attempts to cash checks at the Heritage Bank, it was reasonable under the circumstances for Howard to ask Defendant and the other men if they had any checks on their persons in light of the information Howard had at the time. It was only after Defendant produced a check and Investigator Cope shared his belief that this check was counterfeit that this became an arrest based on probable cause. Howard's actions did not violate the Fourth Amendment.

## CONCLUSION

Based on the foregoing, it is my **RECOMMENDATION** that Defendant's Motion to Suppress be **DENIED**.

**SO REPORTED** and **RECOMMENDATION**, this 24th day of March, 2011.

JAMES E. GRAHAM
UNITED STATES MAGISTRATE JUDGE

AO 72A
(Rev. 8/82)